**Clifford G. MARTIN, Doing Business as Martin Music Company, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 14581.

United States Court of Appeals Ninth Circuit.

Feb. 25, 1956.

Randall S. Jones, Jacob, Jones & Brown, Portland, Or., Harrison W. Call, Sacramento, Cal., Morris Galen, Portland, Or., for appellants.

Warren E. Burger, Asst. Atty., Gen., Richard M. Markus, Samuel D. Slade, Attys., Department of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Portland, Or., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from the judgment entered on August 10, 1954, by the District Court for the District of Oregon, awarding to the United States the sum of $12,978.10. The suit was brought by the Government on December 1, 1952, for a violation of Ceiling Price Regulation (CPR) 34,[1] issued by the Office of Price Stabilization pursuant to its authority under the Defense Production Act of 1950.[2]

Appellant, Martin Music Company, is and was engaged in the business of supplying music by coin-operated phonographs, commonly referred to as "juke boxes", in the states of Oregon and California. Under CPR 34,[3] the ceiling price base period was set forth as being the period December 19, 1950, to January 25, 1951. Between these dates the

---

[1.] 16 Fed.Reg. 4446, as amended, 32A C.F.R. 732.

[2.] Defense Production Act, Public Law 774, 64 Stats. at Large 798, 50 U.S.C.A. Appendix § 2061 et seq.

[3.] See Note 1.

appellant charged five cents (5¢) per play to persons to whom he furnished music on his machines. During the period September 1, 1951, to May 5, 1952, appellant charged ten cents (10¢) per play or three for a quarter. The difference between the actual revenues received at the price of 10¢ or three for a quarter, and the revenues that would have been received at the old price of 5¢ per play, amounted to the sum of twenty-five thousand nine hundred fifty-six and 20/100 dollars ($25,956.20).

Appellant's arrangements with the owners of the locations where he placed his machines, provided that he pay fifty per cent (50%) of the revenues to such owners as the cost for the use of their premises. The United States sued in the district court for a violation of the five-cent ceiling price under CPR 34,[4] and sought treble damages in its complaint pursuant to Section 409(c) of the Defense Production Act.[5] The trial court gave judgment to the United States, holding that "this is not a proper case for the imposition of treble damages" and awarded to the government only fifty per cent of the total overcharges ($12,978.10), the amount the appellant received from the operation of his machines after deducting the share paid to the owners of the establishments where the juke boxes were installed.[6] From that decision this appeal is taken.

Appellant argues for a reversal on two main points: (1) He contends that his business is specifically exempted from the application of Ceiling Price Regulation 34 by the provisions of the said regulation, because he came within the exemption as to "materials furnished for publication by any press association or feature service". (2) He further contends that if his "services" were within the contemplation of the General Ceiling

Price Regulation and of Ceiling Price Regulation 34, the said prices and such services were exempted from the provisions of the said regulation by General Overriding Regulation 14(GOR 14), 16 Fed.Reg. 6664 as amended 32A C.F.R. 1656 (1951).

■ As to point (1), we disagree with appellant. The General Ceiling Price Regulation (GCPR) provided in part as follows:

Sec. 14(16 Fed.Reg. 814, as amended, 32A C.F.R. 1460):

"Exemption and Exceptions. This regulation does not apply to the following:

\* \* \* \* \* \*

"(c) Prices or rentals for:

"(1) Materials furnished for publication by any press association or feature service."

This court agrees with the interpretation given to this provision by this circuit in Schinkal v. United States, 9 Cir., 225 F.2d 882, at page 884, in which Judge Chambers stated:

"We find that the appellant makes a very fine argument, but we reject it, believing that the exemption in the act for 'materials used for publication by any press association or feature service' was designed to protect sources of public information against control rather than Schinkal's publications, if such they be."

It is to be noted that the Schinkal case, as in this case, involved the "juke box" business.

■ As to point (2), we also disagree with the appellant. Under General Overriding Regulation 14,[7] it was provided in part as follows:

"Sec. 3. Exceptions.

"(a) No ceiling price regulation now or hereafter issued by the Office

---

4. See note 1.

5. See note 2.

6. The government in its brief contends that there is some doubt as to the propriety of this ruling, in view of an official O.P.S. interpretation which establishes that the person who controls the juke boxes and makes collections is the seller and is liable for the full amount of overcharges. But the government did not care to raise that issue here.

7. GOR 14, 16 Fed.Reg. 6664 as amended, 32A C.F.R. 1656 (1951).

of Price Stabilization shall apply to the rates, fees and charges for the supply of the services listed below and the services which fall within the scope of the occupations or categories listed below:

"(2) Actors and actresses;

\* \* \* \* \* \*

"(5) Artists;

"(6) Athletes;

\* \* \* \* \* \*

"(23) Entertainers;

\* \* \* \* \* \*

"(39) Musicians;

\* \* \* \* \* \*

"(51) Program elements (package productions) furnished by independent contractors (package producers) for use in radio or television broadcasting or in motion picture, theatre, or night club \* \* \*;

"(54) Sports officials;

\* \* \* \* \* \*

"(77) Managers of actors, actresses and athletes."

Appellant argues that the Office of Price Stabilization in adopting GOR 14 intended to exempt from the application of CPR 34 all entertainers, and that the "juke box" industry fits within the term "entertainer". We agree with the government that these portions of the regulation were enacted to exempt certain recognized *professional persons* whose services are unique and whose charges often depend upon their personal reputations. The appellant does not fall within this classification. This position is borne out by the fact that after the adoption of GOR 14 other forms of entertainment, such as bowling alleys, golf courses, and recreational facilities were clearly covered by O.P.S. regulations and were subject to price control.[8] Thus, the mere fact that a person's business involved some aspect of entertainment to the public did not *per se* exempt it from price regulation.

It is to be noted that subsequent to the time period involved in this case an amendment was made to GOR 14 which decontrolled the juke box business.[9] Thus, it can be assumed that before the amendment, juke boxes were under price controls, otherwise there would not have been need for such amendment.

The judgment is affirmed.

---

8. See O.P.S. Release O–130, CCH, Emergency Business Control Service, Par. 70,114.

9. General Overriding Regulation 14 Amendment 27 (1952).